## MATTER OF GENET.

*Criminal law — escape after conviction suspends right to a review of trial.*

G., who was convicted of a felony, and committed to await sentence, pending an application for the settlement of a bill of exceptions, escaped from the custody of the sheriff. *Held*, that the refusal of the justice before whom G. was tried, to proceed with the settlement of the bill, and to sign and seal the same when settled, while the prisoner was still at large, was proper.

MOTION for a mandamus, on behalf of Henry W. Genet, who was convicted of felony at the December, 1873, term, of the New York oyer and terminer. The opinion states the facts sufficiently.

*William A. Beach*, for Genet.

*Benj. K. Phelps*, district attorney, for the people.

DAVIS, J. The applicant, Henry W. Genet, was convicted of felony at the last December term of the oyer and terminer, and, upon such conviction, was committed to custody, to await sentence pending an application for the settlement of a bill of exceptions. Before that application was disposed of, or sentence pronounced, he escaped from custody, and has since been a fugitive from the State. The bill of exceptions prepared on his behalf, with the amendments proposed thereto by the district attorney, was presented to the

court for settlement. The court declined to proceed with and complete the setlement of the proposed bill, on the ground that the defendant was, and is still, " a fugitive at large and beyond the control and without the power of the authorities of this State, he having made his escape and absconded from their custody after his conviction, while awaiting the action of the court upon it." The applicant now moves the general term for a writ of mandamus, directing the justice, who presided at the oyer and terminer on the trial of the indictment, to proceed with the settlement of the bill, and to sign and seal the same when settled. The reasons assigned by the learned judge, before whom the applicant was tried, for refusing to settle the bill, commend themselves to our judgment. He says: " My conviction is, that, while the defendant is at large as a fugitive beyond the reach and control of the authorities of this State, public policy requires that he should not be allowed to carry on any proceedings in its courts, of the nature of that now proposed on his part by his counsel. Before that should be allowed, he should return and surrender himself to the custody of the proper authorities. Then he will be entitled to all the advantages provided by the laws of the State for the review of criminal convictions. But until that be done, the authorities he has defied by his escape should decline to interfere in his behalf, by the way of placing his case in a shape to have it examined or reviewed. If that course be not adopted, then some encouragement will be afforded by the proceeding which may be authorized, that will operate as an inducement to offenders, after conviction, to escape from custody; because they will then be able to defy the authorities, and, at the same time, require them to act in their behalf, so far as to afford them an opportunity of judging whether they may most safely return or continue to remain away."

It will be observed that the learned judge put his decision upon grounds of public policy. In this, he is sustained by authority. In a case reported in 31 Me. 592 (*Anonymous*), it is stated that the defendant had been tried and convicted upon an indictment for an aggravated offense. He excepted, and was committed for want of sureties to appear at the law term at which the exceptions were to be heard. Meanwhile he escaped. His counsel proposed to argue the exceptions, but the court declined to hear the case until the defendant should be again in custody.

In *Commonwealth* v. *Andrews*, 97 Mass. 543, the defendant was

found guilty, and alleged exceptions, which were allowed, and which he was held in jail to prosecute. The case being called in the supreme judicial court, the attorney-general suggested that the defendant had broken jail and was at large, and asked that he should be defaulted and the exceptions overruled, without argument. The counsel for the defendant admitted the escape, but argued that he was entitled to a hearing on the exceptions, in defendant's behalf; that the defendant's *status,* at the time of the allowance of the exceptions, was alone to be considered by the court in passing on them; that by his escape he had committed a crime, for which he was liable in a separate proceeding; and that to deprive him of a hearing on exceptions, in another and different proceeding, would be to inflict a punishment for his escape, in derogation of his constitutional rights. The court, BIGELOW, C. J., pronouncing the opinion, overruled the several points taken by the defendant's counsel, and held, that, so far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody and failing to appear and prosecute his exceptions in person, according to the order of the court under which he was committed. The defendant was, thereupon, defaulted, and his exceptions overruled. That case goes farther than we are called upon to go, in upholding the decision of the oyer and terminer; for the court defaulted the defendant, because of his escape, and overruled his exceptions, thus putting him in position where he could not be heard, as matter of right, upon his return to custody. In the case at bar, the judge has simply suspended proceedings till the return to custody of the defendant. He has adopted the suggestion of a learned writer on criminal procedure, who says: " If, however, the prisoner has absconded, or is in a position analogous to what is termed being in contempt, it will be highly judicious for the court to decline hearing even a mere legal argument in his absence." 1 Bish. on Cr. Proced., § 277. It is well settled that a party may waive a statutory right, and in some instances rights secured to him by the Constitution. *Buel* v. *Trustees of Lockport,* 3 N. Y. 197; *Cancemi* v. *People,* 16 id. 501. This he may do by his acts as well as by any formal solemnity. The statute gives to a party convicted of crime the right to have errors of law committed on his trial corrected on bill of exceptions. 2 R. S. 736, § 21. But such bill of exceptions is not to stay or delay the rendering of judgment, or the execution of such judgment, except as specially provided by statute. 2 R. S.

736, § 22. Our system for the review of convictions and judgments in criminal cases was not known to the common law, but was created by statute, in relaxation of the rigors of the common law, and for the protection of persons accused of crime against illegal convictions. It is based altogether upon the idea that the party who alleges an erroneous conviction, which he seeks to correct, will hold himself amenable to the judgment of the court of review, to whose supervising justice he appeals. He is at liberty at all times to waive or abandon his proceedings, and this he may do by some formal step in the courts, or by acts which place him beyond the jurisdiction of the courts and out of the custody of the law. In all criminal cases where the judgment of imprisonment is to be pronounced, the defendant must be present in person to receive sentence. 1 Chitty's Cr. Law, 163; *Reg.* v. *Caudwill*, 17 Q. B. 503. "Judgment cannot be given against any man in his absence for a corporal punishment." C. J. HOLT, in *Duke's Case*, Holt, 399. A convict who escapes from custody before judgment, and flees the jurisdiction of the court, puts himself in a position to prevent judgment in a court of review, if adverse to him, and to render it nugatory if in his favor; for the court can pronounce no judgment of corporal punishment without his actual presence, nor can it order a new trial which will be effectual without his voluntary choosing to return and submit to it. We think no person who stands convicted of crime can thus, by committing another offense, make himself master of the situation, and, at the same time, command and defy the judgment of the courts. The true ground, as it seems to us, is to hold that his conduct has, for the time being, waived or suspended his rights, whatever they may be, and that the waiver or suspension can be avoided by him only by returning to the custody and judgment of the law. The process of outlawry at common law against an escaped prisoner, put the criminal in a position where he could not be heard to assert any claim of right until the judgment of outlawry was reversed or set aside. We have abolished that proceeding by statute, but it does not follow that the convict who outlaws himself by escaping from custody can demand, as matter of right, at the hands of the court, the statutory benefits conferred on them who submit to the jurisdiction and judgment of the courts.

The court of oyer and terminer was, we think, justified in refusing to proceed with the bill, because the proceedings would be nug-

tory. No writ of error will lie to bring the bill of exceptions before this court till after judgment shall be pronounced. The defendant is preventing judgment by his unlawful acts; and, while his misconduct keeps the case in that position, the court owes him no duty to perform, on his behalf, an act which he himself renders wholly unavailing. The bill, if settled, could not be brought up on certiorari, without the stay of judgment provided for by statute; and no judge would be bound or likely to grant a certificate of probable cause while the defendant was maintaining a practical stay of all proceedings against him by his flight from justice. It is insisted by the learned counsel for the defendant that Genet can only be deemed to be and treated as in contempt of court, and that the rule that one in contempt will not be heard applies only to matters of favor, and that, though adjudged to be in contempt, the party will be heard on matters of strict right, and is entitled to be heard, if his object is to get rid of the order or other proceedings which placed him in contempt. But the true rule, even in such a case, is that stated by FOLGER, J., in *Brinkley* v. *Brinkley,* 47 N. Y. 49, "that a party in contempt, and until he is purged of it, will not be permitted to ask a favor of the court, nor to take any aggressive proceedings against his adversary; but that it is his right to take measures to protect himself, and to make any motion designed to show that the order adjudging him in contempt was erroneous."

If Genet had been adjudged to be in contempt for his escape (which, perhaps, might be done under proper notice and opportunity to him to show cause) he would be at liberty to take any steps to remove that order, but not to press aggressive proceedings in the case against the people. But he has not been adjudged to be in contempt, nor has any order of that nature been made upon him. The refusal of the court to proceed does not depend on the rules affecting contempts, but on the grounds above stated. It may be contempt to escape custody and flee the jurisdiction of the court; but the contempt is one which can be readily removed by the return of the prisoner; and that is the only step open for him to take to effect its removal. The suggestion of counsel, that the bill should be settled and filed, to guard against dangers arising from the uncertainty of life, is an argument that he should more properly address to his client to hasten his return, lest he should lose the rights which his absence suspends. The court cannot pro-

tect him against the risks of that character, occasioned by his own illegal conduct. The motion for mandamus should be denied.

BRADY, J., concurred.

*Motion denied.*